The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties are properly before the Industrial Commission, are subject to and bound by the provisions of the Workers' Compensation Act, that the Commission has jurisdiction over the parties and of the subject matter, that the Employer-Employee relationship existed between plaintiff and defendant-employer at the time of plaintiff's injury, and that the carrier is Liberty Mutual Insurance Company.
2. Subsequent to the hearing, the parties entered into a stipulation to the effect that "Helen Wilder, if called as a witness at the hearing of this matter, would have testified that she cannot say whether the plaintiff did or did not tell her about plaintiff's injury on September 9, 1993."
****************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff's date of birth is March 17, 1958. On or about September 9, 1993, she was employed by defendant-employer as an Associate II in the shipping and receiving department, whose job duties included filling orders.
2. On September 9, 1993, plaintiff reached overhead to pull a box off a shelf, when she stumbled, lost her balance, and felt something pop in her upper left chest. Plaintiff experienced an immediate onset of pain, but continued to work the remainder of her shift.
3. On September 9, 1993, plaintiff sustained an injury by accident arising out of and during the course and scope of her employment and as a result of which she suffered a left rotator cuff strain as later diagnosed by Dr. William Somers. Stumbling and losing her balance constituted an interruption of plaintiff's normal work routine and the introduction therein of unusual circumstances.
4. Plaintiff began a course of medical treatment which included presenting herself at the emergency room and treating with Dr. Robert Pennington who wrote plaintiff out of work for two (2) days and recommended plaintiff return to light duty work with no lifting above ten (10) pounds. Plaintiff continued treatment with various other medical care providers, including Dr. Somers, Dr. Bruce Khilstrom, and Dr. Weaver.
5. Defendant-employer tailored a light duty job for plaintiff, within her restrictions, which consisted of sorting work orders by alphabetizing and numbering them. Oftentimes, the work was not steady, and plaintiff would have to wait for work to do. This light duty job was one in which plaintiff, under normally prevailing market conditions, would not be able to find elsewhere.
6. On November 1, 1993, plaintiff was terminated from employment with defendant-employer surrounding a controversy concerning plaintiff's time records. Since that date, plaintiff has been unable to earn the same wages that she earned before the aforementioned injury by accident, either in the same employment or other employment. Plaintiff's incapacity to earn the same wages was caused by her injury.
7. On November 7, 1994 plaintiff underwent arthroscopy and subacromial bursoscopy with arthroscopic anterior acromioplasty on her left shoulder.
8. On January 10, 1995, Dr. Somers released plaintiff to return to work with restrictions of no lifting over five to ten pounds, no reaching or lifting above chest level, and no use of her hands in front of her body without support. On April 26, 1995, plaintiff was given permanent work restrictions of no lifting over three pounds from waist to shoulder height, and no repetitive or production type of work where her hands would be elevated and unsupported. Plaintiff has made reasonable efforts to secure employment within her restrictions, but has been unable to do so, at least up until the time of the hearing in this matter.
9. As a result of her injury, plaintiff sustained a 15% permanent partial impairment to her left arm.
10. Plaintiff's average weekly wage was $409.33 yielding a compensation rate of $272.88 per week.
****************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 9, 1993, plaintiff sustained an injury by accident to her left arm which arose out of and in the course of her employment with defendant-employer. Stumbling and losing her balance constituted an interruption of plaintiff's normal work routine and the introduction therein of unusual circumstances. G.S. § 97-2(6).
2. As a direct and proximate result of plaintiff's work-related injury by accident on September 9, 1993, plaintiff sustained an injury to her left arm and is entitled to medical treatment and supplies which are required to effect a cure or give relief. G.S. § 97-25.
3. Plaintiff's average weekly wage was $409.33 yielding a compensation rate of $272.88 per week. G.S. § 97-2(5).
4. Plaintiff has reached maximum medical improvement as a result of her compensable injury, but has been incapable of returning to work with defendant-employer or in any other type of work which plaintiff is vocationally suited. G.S. § 97-29.
5. As a result of her compensable injury on September 9, 1993, plaintiff is entitled to receive vocational rehabilitation services to assist plaintiff in returning to productive employment. G.S. § 97-25.
6. From and after November 1, 1993, when plaintiff was terminated from employment with defendant-employer, plaintiff was and remains incapable because of her work-related left arm injury which she sustained and the resultant pain, to earn the same wages which she was receiving at the time of her injury at the same or any other employment. G.S. § 97-29. The Workers' Compensation Act does not permit a defendant-employer to avoid its duty to pay compensation by offering employment which the injured employee could not find elsewhere under normally prevailing market conditions and which defendant-employer could terminate at will or for reasons beyond its control. G.S. §97-2(9); Peoples v. Cone Mills Corp., 316 N.C. 426,342 S.E.2d 798 (1986).
7. Defendants are entitled to a credit for unemployment benefits payments made to plaintiff of $197.00 per week for 26 weeks. G.S. § 97-42.1.
****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. For her continuing temporary total disability compensation, defendants shall pay plaintiff at the rate of $272.88 per week from and after November 1, 1993 and continuing thereafter at the same rate, until further Order of the Industrial Commission. Defendants, however, are entitled to a credit for payments made to plaintiff during the period in the form of unemployment benefits at $197.00 per week for 26 weeks. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to a reasonable attorney fee as herein approved. Upon returning to work, plaintiff may make an election of benefits pursuant to G.S. § 97-31 or G.S. § 97-30.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury, including continued medical care provided by current treating physicians, and any other services deemed necessary to relieve plaintiff's continuing left arm pain from her compensable injury.
4. Defendants shall provide, and plaintiff shall accept vocational rehabilitation services to assist plaintiff in returning to productive employment.
5. Defendants shall bear the costs.
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ___________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ___________________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/rst 2/20/97